UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RICHARD D. JACKSON,<br><br>            Plaintiff,<br><br>   v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>            Defendant. | Case No.  C04-5048FDB<br><br>REPORT AND RECOMMENDATION<br><br>Noted for March 25, 2005 |

    This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrate Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  This matter has been briefed by the parties.  The undersigned now submits the following report, recommending that the Court affirm the administrative decision to deny plaintiff social security benefits.

STATEMENT OF THE CASE

    Plaintiff filed an application for disability insurance benefits on August 16, 2001 (Tr. 80-82). He alleged he was disabled beginning April 9, 2001, due to a back injury (Tr. 86). His application was denied initially (Tr. 51-54) and upon reconsideration (Tr. 57-59). Plaintiff then requested a hearing before an ALJ (Tr. 60), which was held on November 5, 2002 (Tr. 23-48). At the hearing testimony was taken from Plaintiff and Kathryn Heatherly, a vocational expert. On January 17, 2003, the ALJ issued a decision

REPORT AND RECOMMENDATION
Page - 1

denying Plaintiff's application (Tr. 13-22). The Appeals Council denied Plaintiff's request for review (Tr. 4-6), making the ALJ's decision the final Agency decision. *See* 20 C.F.R. §§ 404.981, 422.210 (2003).

Seeking judicial review, Plaintiff filed a complaint with this court on January 30, 2004. Plaintiff specifically contends: (1) the ALJ erred when he rejected the medical opinion(s) of Dr. Crider, (2) the ALJ erred when he rejected the medical opinion(s) of Dr. Mirkin, and (3) the ALJ erred when he rejected Plaintiff's testimony. Defendant counter-argues that the ALJ applied the proper legal standards and his findings with respect to the medical evidence and Plaintiff's testimony concerning the severity of his limitations are based on appropriate legal standards and supported by substantial evidence.

## STATEMENT OF FACTS

Defendant accurately summarized the facts of this case as follows:

### I. Plaintiff's Background Information and Hearing Testimony

Plaintiff was 43 years old at the time of his alleged onset date (April 9, 2001) and 45 years old at the time the ALJ issued his decision (Tr. 80). He completed high school and worked in the past as a head sawyer in a mill (Tr. 87, 92). He stopped working on April 9, 2001, when the mill closed down (Tr. 29).

Plaintiff testified that he could lift approximately 25 pounds, but could not carry that amount "very far" (Tr. 30). He stated that he could not stoop (Tr. 30). He estimated that he could walk for approximately 15 to 20 minutes, but not continuously, and only if he leaned on something like a shopping cart or cane (Tr. 31). He thought he could sit for approximately 1 hour, if he could shift his weight (Tr. 32). Plaintiff also indicated that he had problems [with] both hands, including difficulties gripping, numbness, and pain (Tr. 39-41). He stated that he had pain in his right shoulder and could "hardly lift it sometimes" (Tr. 39). Plaintiff's back pain was, on average, at a 4 on a 10-point scale (Tr. 51). He napped for about 30 minutes to 2 hours in the morning and again for about 1 to 2 hours in the afternoon (Tr. 42). He indicated that he was sleepy and had problems concentrating, which were side effects from his medication (Tr. 42-43).

### II. Medical Evidence

On April 5, 2001, Dana Mirkin, M.D., examined Plaintiff who was requesting assistance in reopening an old workers compensation claim for left carpal tunnel syndrome and left compression ulnar neuropathy, as he was having recurrent symptoms (Tr. 262). Dr. Mirkin's examination showed that Plaintiff had full active range of motion in the cervical spine and shoulders; normal proximal muscle strength in upper extremities; normal elbow strength; and slightly reduced grip strength in his left hand compared to his right (Tr. 261). Tinel's sign was negative bilaterally; Phalen's sign was positive on the left extremity. Dr. Mirkin diagnosed bilateral ulnar nerve compression neuropathy and left carpal tunnel syndrome, mild (Tr. 261). He advised Plaintiff that he could work with limited use of both hands (Tr. 261).

On April 6, 2001, Plaintiff saw Harold Starr, M.D., complaining of pain in his right hip, pain and numbness in his left hand, and pain in his right hand (Tr. 146). Dr. Starr diagnosed degenerative disk disease of the right hip and recurrence of carpal tunnel (Tr. 146). Dr. Mirkin examined Plaintiff again on April 18, 2001 (Tr. 257). This time, Plaintiff complained of pain in his back that radiated down his left leg, which he associated with a fall that occurred at work on April 2, 2001 (Tr. 257). Dr. Mirkin noted positive Waddell's

signs, no tenderness in the back, and straight leg testing was positive while in a seated position (Tr. 257). He diagnosed low back pain, cause unknown; diabetes mellitus; status post lumbar laminectomy; and lumbar radiculopathy. He advised Plaintiff to purse physical therapy. He opined that Plaintiff could work with no lifting, pulling, pushing, or carrying of more than 20 pounds, no ladder climbing, and no prolonged stooping or bending (Tr. 257).

On May 15, 2001, Dr. Mirkin examined Plaintiff, who was again complaining of low back pain and carpel tunnel symptoms. Dr. Mirkin opined that Plaintiff could return to work with no restrictions (Tr. 252). On May 24, 2001, James Crider, M.D., examined Plaintiff for his complaints of low back pain. Plaintiff explained that he twisted his back at work and had been unable to work (Tr. 145).2 Dr. Crider noted that Plaintiff had no SI joint tenderness and that straight leg testing bilaterally was negative. Plaintiff was able to heel and toe-walk without difficulty and touch his mid-shin; he had almost no extension of the lumbar spine due to pain. Dr. Crider diagnosed facet joint strain and advised Plaintiff to go to physical therapy. He stated that Plaintiff was unable to lift more than 20 pounds, unable to sit for more than one hour at time, and could not walk more than 100 yards at a time, due to discomfort (Tr. 145).

On July 19, 2001, Dr. Crider wrote Plaintiff's attorney a letter, expressing his opinion that Plaintiff was "unable to do any work" and that he could not "foresee when he would be able to return to work, at least at this time" (Tr. 137). Dr. Crider related that Plaintiff had injured his back at work on April 2, 2001, and had low-back pain that radiated to his left leg and left foot (Tr. 137). He also stated that a recent magnetic image (MRI) scan showed a disk bulge at L4-5 (Tr. 137).

On August 20, 2001, Jay Miller, M.D., an orthopedic surgeon, examined Plaintiff at the request of Dr. Crider (Tr. 122-24). On examination, Dr. Miller noted that Plaintiff had mild guarding and his gait was a little stiff, but otherwise unremarkable. Extension aggravated his back pain and straight leg testing was mildly uncomfortable at 60 degrees (Tr. 123). Dr. Miller reviewed the MRI and diagnosed a mild L4-5 central lumbar disc protrusion/bulge (Tr. 124). He did not recommend surgery and stated that Plaintiff would benefit from "a prolonged course of fitness, weight loss and stretching" (Tr. 124). He also recommended that Plaintiff seek vocational rehabilitation "since employability issues are going to be important" (Tr. 124).

The State Agency reviewing physician opined in September 2001that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; could stand/or walk for a total of 6 hours in an 8-hour day; and sit about 6 hours in an 8-hour day (Tr. 130). Further, he opined that Plaintiff could occasionally climb ramps or stairs, stoop, kneel, and crouch, but never crawl (Tr. 131). Richard Grant, M.D., a second State Agency reviewing physician, agreed with this assessment in January 2002 (Tr. 134).

On October 1, 2001, Dr. Crider opined that Plaintiff "continue[d] to be disabled due to back pain" and that he had been "disabled since April 9th" (Tr. 130). He did not explain the basis for his opinion. On October 12, 2001, Dr. Crider examined Plaintiff for his complaints of numbness and tingling in both hands. Dr. Crider noted a positive Tinel sign over the ulnar groove on the left arm; it was negative on the right. Dr. Crider diagnosed intermittent ulnar compression neuropathy, which was related to position (Tr. 14). He instructed Plaintiff to change positions more frequently (Tr. 140).

On November 29, 2001, Thomas Gritzka, M.D., examined Plaintiff for his complaints of low back pain (Tr. 153-59). Dr. Gritzka reviewed Plaintiff's medical history, including a past back surgery in 1992, complaints of hip pain in 1997, and a left ulnar nerve decompression at theelbow and left carpal tunnel release (Tr. 153-54). After examining Plaintiff, Dr. Gritzka diagnosed herniated disc, L4-5, with bilateral radiculopathy, left greater than right; status post L5-S1 laminotomy and diskectomy; status post proximal femoral osteotomy for right slipped capital femoral epiphysis; status post left ulnar nerve decompression at the elbow; status post left carpal tunnel release; diabetes; hypercholesterolemia; and hypertension (Tr. 158). He opined that Plaintiff "might respond to conservative treatment, although this would likely be a slow and protracted course" (Tr. 158). He also opined that Plaintiff needed "chronic long-term care for
his low back" (Tr. 158). He did not provide an opinion regarding Plaintiff's limitations.

REPORT AND RECOMMENDATION
Page - 3

At the request of Dr. Crider, Robert Arnsdorf, M.D., began treating Plaintiff for his low back pain beginning in November 2001 (Tr. 208-10). Initially, Dr. Arnsdorf believed that Plaintiff's symptoms were suggestive of irritation in the posterior elements of the spine (Tr. 209-10). He stated that some of Plaintiff's lower extremity numbness could be associated with diabetic neuropathy (Tr. 210). He noted that Plaintiff was "clearly deconditioned and has assumed a disabled societal role" (Tr. 210). He also opined that Plaintiff "should be capable of at least sedentary work" and that he "would not support permanent disability" (Tr. 210).

Dr. Arnsdorf treated Plaintiff throughout 2002, mainly prescribing him medication (Tr. 172- 207). In March 2002, Plaintiff reported that his symptoms improved (Tr. 189). In April 2002, Dr. Arnsdorf reported that electromyogram (EMG) studies showed no ongoing nerve root impingement, but did show some old nerve damage that could have contributed to his pain (Tr. 183). By June 2002, Dr. Arnsdorf stated that Plaintiff reported that he was better and was more active, working in his yard and that his pain was "well controlled" (Tr. 175). In July 2002, Plaintiff told Dr. Arnsdorf that his pain increased after he waded in a river. Dr. Arnsdorf felt that Plaintiff should proceed with vocational rehabilitation (Tr 172). Dr. Crider continued to see Plaintiff in 2002, primarily for treatment relating to his diabetes (Tr. 160-62). In April 2002, Dr. Crider declined to provide Plaintiff with documentation for a disabled parking permit, explaining that Plaintiff was not qualified (Tr. 161).

On May 24, 2002, Plaintiff consulted Dr. Mirkin regarding pain in his right fingers and left arm. Dr. Mirkin diagnosed left ulnar nerve entrapment and mild osteoarthritis of the right hand. He advised that Plaintiff should consult with a surgeon and that he could return to work with limited use of his left arm (Tr. 244).

In July 2002, Richard Green, M.D., opined that Plaintiff had recurrent left cubital tunnel syndrome that could be treated with a subcutaneous ulnar nerve transposition. He stated that he would perform surgery once it was approved by workers compensation (Tr. 228).

On August 8, 2002, Dr. Crider completed a Physical Capacities Evaluation form (Tr. 279-80). He opined that Plaintiff could lift and carry up to 10 pounds frequently and 25 pounds occasionally. He stated that Plaintiff could use both of his hands for repetitive actions, such as grasping, pushing and pulling, and fine manipulation (Tr. 279). He opined that Plaintiff could not squat, but could bend, crawl, and climb occasionally, and could reach above shoulder level frequently (Tr. 280). Finally, he opined that Plaintiff would miss work four days per month (Tr. 280). He explained that he believed Plaintiff would miss work this frequently because of the "severity of his pain, due to his degenerative disk disease" (Tr. 281).

Defendant's Brief at 3-8

## DISCUSSION

The Commissioner's decision must be upheld if the ALJ applied the proper legal standard and the decision is supported by substantial evidence in the record. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, this Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579

(9th Cir. 1984).

A. *THE ALJ PROPERLY CONCLUDED THAT PLAINTIFF'S TESTIMONY WAS NOT CREDIBLE*

Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (*en banc*), is controlling Ninth Circuit authority on evaluating plaintiff's subjective complaints. Bunnell requires the ALJ findings to be properly supported by the record, and "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony regarding pain.'" Id. at 345-46 (quoting Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)). An ALJ may reject a claimant's subjective complaints, if the claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) However, as further explained in Fair v. Bowen, *supra*, and Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996), the Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferrable to a work environment where it might be impossible to rest periodically. The ALJ is responsible for determiningcredibility, resolving conflicts in medical testimony, and for resolving ambiguities. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

Here, the ALJ rejected Plaintiff's subjective complaints as inconsistent with the medical treatment record and inconsistent with the statements Plaintiff made to his physicians (Tr. 18). The ALJ's evaluation of the medical is discussed below, and the record supports the ALJ's finding that Plaintiff made inconsistent statements to his medical providers. For instance, Plaintiff alleged that he needed daily naps, was sleeping, and had problems concentrating, all side effects of his medication (Tr. 42-43); yet, he told Dr. Arnsdorf that he had no side effects from his medication (Tr. 172). Plaintiff further claimed that he had pain in his right shoulder and "hardly lift it sometimes"(Tr. 39). However, no physician diagnosed an impairment of the right shoulder during his alleged period of disability; the last diagnosis regarding his right shoulder was in 1999, 2 years before his alleged onset date (Tr. 263). Plaintiff claimed that he had numbness and pain in his right hand and that he had difficulty gripping with it (Tr. 39-41). However, In May 2002, Dr. Mirkin diagnosed "mild osteoarthritis of the right hand" and did not note any limitations (Tr. 241). Significantly, no doctor noted any abnormalities in his right hand. The ALJ also found it notable that Plaintiff used a cane, yet had never had this use prescribed by any of his physicians, and that Dr. Crider

REPORT AND RECOMMENDATION
Page - 5

refused to complete paperwork requested by Plaintiff for a disabled parking permit (Tr. 18). "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Accordingly, the ALJ provided sufficient reasons for finding Plaintiff not credible.

B.   THE ALJ PROPERLY EVALUATED THE MEDICAL EVIDENCE, INCLUDING THE OPINIONS OF DR. CRIDER AND DR. MIRKIN

The ALJ is entitled to resolve conflicts in the medical evidence. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). He may not, however, substitute his own opinion for that of qualified medical experts. Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982). If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996). In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from the claimant that conflicted with the treating physician's opinion.

Here, the ALJ summarized the medical evidence and specifically discussed the opinions from Dr. Crider and Dr. Mirkin in his decision (Tr. 15-17).

The ALJ accepted all of Dr. Crider's assessment regarding Plaintiff's physical capacities except for Dr. Crider's opinion that Plaintiff would miss 4 days of work per month due to pain (Tr. 280-81). The ALJ rejected this opinion as it was inconsistent with Dr. Crider's treatment record (Tr. 18). The ALJ's rejection on this basis is appropriate. Dr. Crider stated that Plaintiff would miss work because of his degenerative disc condition (Tr. 281). However, Dr. Crider was not actively treating Plaintiff for this condition. The last examination Dr. Crider performed was in December 2001 (Tr. 138). Subsequent examinations focused on Plaintiff's diabetes or elbow pain (Tr. 160-62). Plaintiff points out that Dr. Crider was aware of Plaintiff's degenerative disc disease as Dr. Arnsdorf regularly communicated with him,

1 providing Dr. Crider updates after every examination (Pl.'s Op. Br. at 22). However, Dr. Arnsdorf
2 specifically stated that he would not support permanent disability and that Plaintiff was at least capable of
3 sedentary work (Tr. 210). Reports from Dr. Arnsdorf in 2002 noted that Plaintiff reported improvement of
4 his pain (Tr. 172, 175, 179, 189).

5       Similarly, the ALJ accepted Dr. Mirkin's opinion that Plaintiff was capable of returning to work
6 with limited use of his left arm (Tr. 19). The ALJ interpreted this limitation to mean that Plaintiff could not
7 use the left arm for lifting over 10 pounds, and that he could only use the arm "as an assist function" (Tr.
8 19). This interpretation of Dr. Mirkin's opinion is consistent with Dr. Mirkin's treatment notes.

9       Contrary to Plaintiff's allegations, Dr. Mirkin's notes do not indicate that Plaintiff had limitations in
10 the use of his hand, his grip, or ability to manipulate. On April 11, 2001, Dr. Mirkin noted that Plaintiff's
11 grip strength was approximately 4 out 5 on the left compared to the right with normal intrinsic muscle
12 strength in both hands (Tr. 261). There was some decreased sensation to pinprick and vibration noted in
13 the left little finger and the left middle finger, but normal sensation to fine touch throughout (Tr. 261). On
14 May 15, 2001, Dr. Mirkin further noted normal sensation to fine touch, good grip strength, and normal
15 dorsiflexor strength bilaterally (Tr. 252). Approximately a year later, on April 26, 2002, Dr. Mirkin noted
16 that testing showed normal nerve conduction velocities of the upper extremities except for in the left ulnar
17 nerve (Tr. 247).  Further, Dr. Green noted on testing that Plaintiff had "slightly weaker" muscle function
18 on the left, which is consistent with the ALJ's finding that Plaintiff's left ulnar nerve entrapment only
19 caused muscle weakness (Tr. 228). In addition, the ALJ's interpretation of Dr. Mirkin's
20 assessment is consistent with Dr. Crider's opinion that Plaintiff had no limitations in grasping, pushing and
21 pulling, and fine manipulation (Tr. 279). In sum, the ALJ's interpretation of Dr. Mirkin's opinion is
22 consistent with Dr. Mirkin's treatment notes and other medical evidence of record.

23       Accordingly, the ALJ properly evaluated the medical evidence and the opinions of Dr. Crider and
24 Dr. Mirkin.

25 //////////////
26 //////////////
27 //////////////
28 //////////////

## **CONCLUSION**

The ALJ's decision is supported by substantial evidence in the record. Therefore, the Court should AFFIRM the administrative decision. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **March 25, 2005**, as noted in the caption.

DATED this 3rd day of March, 2005.

*/s/ J. Kelley Arnold*
J. Kelley Arnold
United States Magistrate Judge